Everett HEYMAN, d/b/a Pleasure Products Co., Plaintiff,

v.

AR. WINARICK, INC., Ar. Winarick, Inc., Dura-Gloss Division, Jules Winarick, Hugo L. Bell and William J. Hanley, Defendants.

United States District Court
S. D. New York.

Oct. 24, 1958.

Bass & Friend, New York City, for plaintiff.

Blackman & Willner, New York City, for defendants except William J. Hanley.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff sues for an injunction, damages and an accounting of profits alleging misappropriation of trade secrets, unfair competition and breach of contract by defendants. He moves for a preliminary injunction restraining defendants pendente lite from using his alleged trade secrets, manufacturing or selling the competing product, soliciting plaintiff's customers and engaging in alleged unfair advertising practices.

Plaintiff, a citizen of California, has, since October 1956, been engaged in the manufacture and sale of a finger nail hardener called "It's a Pleasure". This product is designed to strengthen the finger nails by the daily immersion of the tips of the fingers in a prepared solution. Plaintiff claims that he originated this product after considerable research and experimentation, and that his was the first finger nail hardener utilizing the dip technique to reach the market.

Defendant, Ar. Winarick, Inc., a New York corporation, is a large cosmetic firm which has a yearly volume of business in excess of three and one-half million dollars. Among the products manufactured by defendant are such widely sold items as Jeris and Herpicide hair preparations and the Dura-Gloss and Dr. Ellis lines of nail polishes and other finger nail preparations and accessories.

Defendants Jules Winarick and Hugo L. Bell are officers and employees of Ar. Winarick, Inc. Defendant William J. Hanley is a business consultant and negotiator who was retained by the corporate defendant Ar. Winarick, Inc., in connection with the transaction involved in this suit. Winarick and Hanley are citizens of New York. Bell is a citizen of Connecticut.

On September 26, 1957, plaintiff placed an advertisement in the Wall Street Journal in which he offered to sell his nail hardener business for $80,000. The defendant Ar. Winarick, Inc., through its broker, the defendant Hanley, contacted the plaintiff in California and indicated its interest in plaintiff's business. Plaintiff forwarded his financial statement to Hanley, and, on October 18, 1957, defendant Bell, who was General Sales Manager of the corporate defendant, called on the plaintiff at his place of business in Los Angeles. At that time Heyman told Bell about some aspects of the techniques he used to manufacture, market and sell "It's a Pleasure", and permitted Bell to examine certain of his books and records.

On November 7, 1957, Bell again came to plaintiff's establishment and examined plaintiff's files and books once more. The next day plaintiff met with Bell and defendant Jules Winarick and negotiations for the sale of plaintiff's business continued. It is during this conference that plaintiff claims he revealed to the defendants Bell and Winarick the secret formula used in making "It's a Pleasure" nail hardener. Plaintiff claims that at that meeting he also permitted defendants to peruse his customer lists and make notes thereon.

On November 13, 1957, defendants wired plaintiff that they were no longer interested in purchasing plaintiff's business.

In March 1958 the corporate defendant placed on the market a dip type liquid finger nail hardener under the name of "Dura-Gloss Finger Nail Hardener". Defendants' product has been widely advertised and is sold at a retail price considerably below that of plaintiff's product.

In asking for preliminary relief plaintiff contends that the defendants never actually desired to purchase plaintiff's business but entered into negotiations for the sole purpose of appropriating plaintiff's secret formula and using it for their own commercial advantage. Plaintiff claims that the formula was disclosed to defendants in confidence in connection with the negotiations for the sale of plaintiff's business, and that the defendants have breached the confidence reposed in them by appropriating the formula to their own use.[1]

Plaintiff claims further that the defendants have solicited his customers whose names were allegedly revealed to the individual defendants Bell and Winarick during the course of their discussions with plaintiff concerning the purchase of plaintiff's business. He also claims that the defendants have copied his advertising format and phraseology, that the "dip" technique has acquired a secondary meaning and is generally associated in the public mind with plaintiff's product, and that the defendants are thus wrongfully palming off their product as that of plaintiff.

The defendants in their opposing affidavits strenuously deny that they were

---

1. See Franke v. Wiltschek, 2 Cir., 209 F. 2d 493; Tabor v. Hoffman, 118 N.Y. 30, 23 N.E. 12; Berry v. Glidden Co., D.C. S.D.N.Y., 92 F.Supp. 909; Restatement, Torts § 757.

ever apprised of plaintiff's formula, and claim that their product, "Dura-Gloss Finger Nail Hardener" was developed independently by Crag Products, Inc., and that it is not composed of the same ingredients as plaintiff's product. There is, therefore, a sharp issue of fact as to whether plaintiff's formula was ever disclosed to defendants Bell or Winarick during the negotiations in California.

The plaintiff, Everett Heyman, has submitted an affidavit, the contents of which he requests be kept confidential, wherein he describes the ingredients of his product and the allegedly beneficial way in which it operates on brittle and broken finger nails. He annexes a report prepared in another connection by Zeidler-Bennett, Ltd., a research and testing laboratory, which compares the characteristics of plaintiff's product to those of "Amazing", a competing "dip" nail hardener manufactured by Amazing Products, Inc. of Coral Gables, Florida. There is no such comparative analysis submitted in relation to "Dura-Gloss". The only attempt made by plaintiff to show the identity of "It's a Pleasure" with "Dura-Gloss" is an affidavit by a chemist, Dr. Chester A. Snell. This affidavit is superficial, to say the least, and does not include any detailed comparison of the ingredients of the two products. Dr. Snell states, in conclusory terms, that "These two products are essentially the same" and that "both contain condensed polyethylene oxides and high molecular weight esters" and that "the color is given by similar red fluorescent dyes".

On the other hand, defendants submit a much more detailed study of the two products by the chemist who developed "Dura-Gloss" which indicates that some of the principal ingredients of plaintiff's formula are not contained in defendants' formula and that the effectiveness of the two products is dependent on entirely different chemical reactions. Defendants' chemist concludes that "except for water and a trace of certified color, the only similar ingredient is the nonyl phenyl polyethylene glycol ether which is recognized * * * as being a desirable 'surface active agent', or a detergent * * *".

A question of fact is therefore presented as to the identity of the two formulae. Where a case contains complicated technical aspects the court should have the benefit of expert opinion clarified by cross-examination, and should not resolve the technical dispute upon conflicting affidavits submitted in support of a motion for a preliminary injunction. Hall Signal Co. v. General R. Signal Co., 2 Cir., 153 F. 907.

A motion for a preliminary injunction is addressed to the discretion of the court. Burlington Mills Corp. v. Roy Fabrics, D.C.S.D.N.Y., 91 F.Supp. 39; American Visuals Corp. v. Holland, 2 Cir., 219 F.2d 223; Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 208 F.2d 464. While it is not necessary for a plaintiff to prove a case which will entitle it to a decree after trial, Burlington Mills Corp. v. Roy Fabrics, supra, it is nevertheless essential that plaintiff make a clear and convincing showing that he is entitled to the drastic relief of an injunction pendente lite. Chase v. Rieve, D.C. S.D.N.Y., 90 F.Supp. 184; Bernstein v. Herren, D.C.S.D.N.Y., 136 F.Supp. 493; Burlington Mills Corp. v. Roy Fabrics, supra; Hall Signal Co. v. General R. Signal Co., supra.

The test is frequently phrased in terms of whether it is probable, under the facts presented, that the plaintiff will ultimately succeed at the trial. Margolis v. Franks, D.C.S.D.N.Y., 138 F. Supp. 9; Bernstein v. Herren, supra; David Electronics Co. v. Channel Master Corp., D.C.S.D.N.Y., 116 F.Supp. 919.

Where sharp issues of fact are presented it is apparent that the case is not a fit one for preliminary relief and the resolution of the disputed issues must await trial. Chase v. Rieve, supra; American Visuals Corp. v. Holland, supra; Huber Baking Co. v. Stroehmann Bros. Co., supra; Hall Signal Co. v. General R. Signal Co., supra.

In the case at bar, after reading the conflicting affidavits of the chemists

relative to the identity of the products, and of the parties to the California negotiations relative to the disclosures there made, it is plain that these issues cannot be resolved upon a motion for a preliminary injunction, but must await trial for their determination.

■ The factual dispute as to whether plaintiff's customer lists were given to the defendant during the course of the negotiations is in the same posture. While defendants acknowledge that plaintiff revealed some of his principal accounts during the discussion, they claim that these were customers with whom the corporate defendant had been dealing for many years in its drug and cosmetic business and that plaintiff told the defendants nothing that they did not already know. In view of the fact that Ar. Winarick, Inc., has been extensively engaged in the drug and cosmetic business for forty-five years, it is apparent that it must have been thoroughly familiar with the market. However, it is sufficient, for the purposes of this motion, that a sharp factual dispute exists as to whether a customer list was actually given to the defendants and whether the names of the customers given orally, in view of their prominence in the trade, can logically be said to have been given in confidence.

■ The plaintiff's bare allegation that the "dip" technique has acquired a secondary meaning and that it is associated in the public mind with plaintiff's product, is a conclusion merely, and the supporting papers present no facts from which such a finding could be made. The fact that defendants' product has a completely different name, that the bottles bear no resemblance to each other, and that "Dura-Gloss" sells at a much lower retail price would indicate that no possible confusion could result.

■ Plaintiff's claim that the "dip" technique was original and unique with him cannot be accepted by the court in view of the defendants' showing that the Revlon Company preceded plaintiff by several years in the manufacture and sale of a so-called "Lactol Manicure" utilizing the "dip" technique which was designed to correct brittle or splitting nails. In connection with this claim, it should be noted that defendants' affidavits and exhibits show that at least two other "dip" nail hardeners are currently on the market. Plaintiff has made no satisfactory explanation of how these competing products fit into the over-all picture, a question which should be answered in view of plaintiff's claim of uniqueness and originality for his product. This is just another aspect of this case which should be fully developed at the trial. Plaintiff himself has attempted to demonstrate that one of these products, "Amazing", has substantial identity with his own.

■ Nor has plaintiff satisfactorily established his claims that the defendants have copied his advertisements. The exhibits before the court do not convince me that there is any merit to this claim. Plaintiff's advertisement contains three boxes. The first depicts a broken finger nail, the second, four fingers immersed in a bowl of liquid, and the third, a healthy finger nail. Defendants' advertisement also has three boxes, but the first and third boxes show a whole hand rather than a single finger. While there is some similarity between the two advertisements, the "before and after" technique is commonly employed in commercial advertising to dramatize product effectiveness. The affidavit of Charles E. J. Clifford, defendants' advertising firm, states that defendants' advertisement was prepared by his firm without any knowledge of plaintiff's advertisement, and that no attempt was made to copy or imitate plaintiff's format. It does not follow from a comparison of the two advertisements that one was copied from the other.

In view of the factual questions presented it cannot be said with any degree of certainty that it is likely that plaintiff will ultimately prevail in this action. The case is therefore not one in which the extraordinary relief requested should

be granted, and plaintiff's motion for a preliminary injunction is in all respects denied. The resolution of the factual issues presented must necessarily await trial.

Settle order on notice.